IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ARCTIC GLACIER U.S.A., INC., *et al.*, | * | |
| Petitioners, | * | |
| v. | * | Civil Action No. PX 16-3555 |
| PRINCIPAL LIFE INSURANCE COMPANY, | * | |
| Respondent. | * | |

******

## MEMORANDUM OPINION

Pending before the Court is a "Petition to Compel Arbitration and Other Dispute Resolution Procedures," ECF No. 1, pursuant to the 9 U.S.C. § 4 of the Federal Arbitration Act, filed by Arctic Glacier U.S.A., Inc. ("Arctic Glacier U.S.A.") and the Arctic Glacier U.S.A., Inc. Savings and Retirement Plan ("the Plan," and collectively, "Petitioners"). Respondent Principal Life Insurance Company ("Respondent") opposes the Petition. *See* ECF No. 7.[1] For the reasons stated below, the Court orders that this case be transferred to the United States District Court for the District of Nebraska, consistent with the arbitration clause in the pertinent agreement.

### I. Background

Arctic Glacier U.S.A. is a Delaware corporation headquartered in the state of Minnesota and is in the business of providing packaged ice products. The Plan is a retirement benefits plan sponsored by Arctic Glacier U.S.A. for their employees. *See* Service Agreement, ECF No. 1-1 at 2. Respondent Principal Life Insurance Company is an Iowa corporation with its principal place

---

[1] Because Plaintiff's Petition is to be treated as a motion, Respondent's pleading shall be treated as a response in opposition. *See Liberty Mut. Grp., Inc. v. Wright*, No. DKC 12-0282, 2012 WL 718857, at *7 (D. Md. Mar. 5, 2012) ("Applications filed pursuant to § 6 are, therefore 'motions . . . rather than complaint[s] initiating . . . plenary action.'" (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 108 (2d Cir. 2006)).

of business also in Iowa, licensed to conduct business as an insurance company in the state of Maryland.[2] *See* ECF No. 1 at 3.

According to the Petition, Respondent entered into a Service and Expense Agreement (the "Agreement") with Arctic Glacier International, Inc. as the Plan's original sponsor, effective January 1, 2011. *See* Service Agreement, ECF No. 1-1; *see also* ECF No. 1 at 1.[3] The "Duration of Agreement" provision in the Agreement states that the "Agreement will remain in effect indefinitely. It will be fully binding on the Parties. It will also extend to their respective successors and assigns." *See* Service Agreement, ECF No. 1-1 at 8. However, the Agreement also requires that "any right, title, interest or performance with regard to this Agreement" may be assigned only with "the express written agreement of both Parties." *See* Service Agreement, ECF No. 1-1 at 8–9.

Petitioner acknowledges that there is no one document that expressly reflects assignment to Artic Glacier U.S.A. and the Plan by "express written agreement of both Parties" of the Agreement. Rather Petitioners include in the Petition documentary evidence supporting that as of July 2012, the Agreement was assigned from Arctic Glacier International, Inc. to Arctic Glacier U.S.A. Petitioners specifically include amendments executed by both parties which changed the Plan's name from "Arctic Glacier International, Inc. Savings and Retirement Plan" to "Arctic Glacier U.S.A., Inc. Savings and Retirement Plan." *See* Adoption Agreement, ECF No. 1-6 at 12; *see also* Letter re "Change in Plan Sponsorship," ECF No. 1-6 at 5. This Plan amendment, effective July 27, 2012 and prepared by Respondent, expressly provided that the employer sponsoring the Plan going forward would be Arctic Glacier U.S.A., and not Arctic Glacier

---

[2] Maryland law requires out-of-state insurance companies who offer insurance in Maryland to have the Maryland Insurance Commissioner serve as their statutory agent for the delivery of complaints. *See* Md. Code Ann., Ins. § 4–107 (2017).

[3] "Arctic Glacier International, Inc." is not a party to the Petition.

International. *See* Adoption Agreement, ECF No. 1-6 at 12. Petitioners also include Respondent's submission to the IRS identifying Arctic Glacier U.S.A. as the new employer and sponsor of the Plan and identifying Arctic Glacier U.S.A's employees as the Plan participants. *See* Principal Financial Group Prototype for Savings Plans, ECF No. 1-6 at 12.

### A. The Allegations Underlying the Dispute

In early 2013, the Plan fiduciaries elected to make various changes to the Plan's investment options on behalf of Arctic Glacier U.S.A.'s employee-participants to take effect on April 1, 2013. *See* ECF No. 1 at 5. Pursuant to the Plan changes, unless the Plan's participants made an alternative selection, the Plan's participants invested by default in funds which were based upon a participant's age ("target date funds"). *See id.* The degree of risk exposure in a particular target date fund is dependent upon the participant's anticipated retirement date. *See id.*

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), Respondent was required to provide a Notice of Change of Investment Options ("Notice") to Plan participants by no later than March 1, 2013. *See* ERISA § 404(c)(4)(C)(i), 29 U.S.C. § 1104(c)(4)(C)(i) (notices required "at least 30 days and no more than 60 days prior to the effective date of the change . . . ."). Arctic Glacier U.S.A. provided Respondent with the names and addresses of the Plan's participants. *See* ECF No. 1 at 6; ECF No. 1-4 at 5. According to the Petition, Respondent failed to provide the requisite notice and instead sent the notices to nonparticipants. *See* ECF No. 1 at 6. Consequently, on April 1, 2013, the Plan participants had their entire retirement account balances and additional future contributions placed into the applicable default target date funds. *See id.*

To make matters worse, say Petitioners, Respondent had no mechanism in place to catch the error. Accordingly, the Plan participant funds were misallocated until January 2014. Had

Respondent employed quality control procedures, "Respondent would have become aware of its failures and, at a minimum, been able to limit the harm suffered by the Plan and its participants." *See* ECF No. 1 at 7.

### B. The Dispute Resolution Procedures of the Agreement

The Agreement that governs the Plan administration contains an arbitration provision. The parties do not dispute at this stage that Respondent's alleged notice failures fall under the Agreement's arbitration clause. Accordingly, Arctic Glacier U.S.A. and the Plan contend that Respondent's refusal to participate in the predicate resolution procedures per the Agreement justifies this Court compelling Respondent to submit to arbitration pursuant to § 4 of the Federal Arbitration Act ("FAA").

The Agreement's Dispute Resolution clause specifically describes a three-step procedure of negotiation, mediation, and then arbitration:

> *Negotiation. If the Parties cannot resolve a dispute in the ordinary course of business, the Party claiming a dispute against the other shall give the other Notice of that dispute in writing, stating the nature of the dispute and the relevant facts, including documentation, and referring to this article. The other Party will then have 15 calendar days to make a complete, written response in a Notice to the other. The Parties will meet to discuss the dispute. If practicable and mutually desirable, the Parties will meet in person. If the dispute remains unresolved for any reason after 60 calendar days following the mailing of the response, the Parties will then proceed to mediation.
>
> *Mediation. The Parties will, as soon as commercially reasonable after the 60 calendar day period referred to under negotiation, above, initiate the mediation process and endeavor in good faith to settle their dispute by mediation. Unless the Parties agree to the contrary, the mediation will conform to the then current Mediation Rules for Commercial Financial Disputes of the American Arbitration Association or such similar organization as the Parties may agree. If the Parties cannot agree on a neutral mediator, one will be appointed by the American Arbitration Association in

4

> accordance with its mediation rules. Mediation will occur within 60 days of the initiation of the mediation process. The Parties will share equally in the Fees and expenses of the mediator and the cost of the facilities used for the mediation, but will otherwise bear their respective costs incurred in connection with the mediation. The mediation shall be non-binding. If the dispute remains unresolved for any reason after the completion of the mediation process, the Parties will then proceed to arbitration.
>
> *Arbitration. If a dispute is to be resolved by arbitration, the arbitration proceeding will take place in the capital city of the State, unless the Parties agree to the contrary. The arbitration will be governed by the Federal Arbitration Act. . . . The arbitrators must decide the dispute in accordance with the substantive law which would govern the dispute had it been litigated in court. This requirement does not, however, mean that the award is reviewable by a court for errors of law or fact.
>
> Following the arbitration hearing, the arbitrators will issue an award and a separate written decision that summarizes the reasoning behind the award and the legal basis for the award. The arbitrators may not award punitive damages and may not require one Party to pay another Party's costs, Fees, attorneys' Fees, or expenses. The award of the arbitrators will be binding on each Party. Judgment upon the award may be entered in any federal district court.

*See* Service Agreement, ECF No. 1-1 at 11 (Article IV, Dispute Resolution).

On April 11, 2016, Petitioners attempted via written communication with Respondent to invoke the first "negotiation" phase of dispute resolution. *See* ECF Nos. 1-2, 1-3, 1-4, 1-5, 1-6. This was followed by several written exchanges, none of which produced fruitful discussion on the merits of Petitioners' claims. Then on October 26, 2016, Petitioners filed the instant Petition to compel arbitration. ECF No. 1.

Respondent opposes the Petition on two main grounds. First, Respondent contends that the Petitioners lack Article III standing to compel arbitration because they are not parties to the Agreement. Along the same lines, Respondent claims that because the Petitioners are not parties

5

to the Agreement, any claims they may have are not arbitrable. Second, Respondent asserts that if this Court determines the Petitioners are proper parties, the Court must nonetheless dismiss the Petition because the Agreement requires that all related disputes be resolved in the District of Nebraska. ECF No. 7-1. at 7. The Court will first address the jurisdictional issues before considering whether dismissal is warranted under the Agreement's forum selection clause. *See Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 599 (D. Md. 2014) ("Generally, questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." (quoting *Owens–Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (internal quotation marks omitted)).

## II. The Court's Jurisdiction

### A. Legal Standard

Under the FAA, arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The provisions of the FAA may be enforced in state or federal court, and "[t]he 'body of federal substantive law' generated by elaboration of FAA § 2 is equally binding on state and federal courts." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009). For suits brought in federal court, § 4 of the FAA provides that a petition to compel arbitration pursuant to an arbitration agreement may be brought in "any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4 ("§ 4"). Thus, the FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. at 59 (internal quotation and alteration omitted).

### B. Jurisdiction – Article III Standing

Because Respondent challenges this Court's jurisdiction, the Court must accept as true all material allegations of the Petition in favor of the Petitioners. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("One element of the case-or-controversy requirement is that appellees, *based on their complaint*, must establish that they have standing to sue." (emphasis added)). *See Republic Bank & Trust Co. v. Kucan*, 245 F. App'x 308, 311 (4th Cir. 2007) (citing *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)). Petitioners bear the burden of establishing standing, as they are "the party seeking to invoke federal jurisdiction." *Friends for Ferrell Parkway*, 282 F.3d at 320 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Whether Petitioners have standing is determined by considering the relevant facts as they existed at the time the action was commenced. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that [the plaintiff] had Article III standing at the outset of the litigation.").

Article III standing "is designed to guarantee that the [petitioner] has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate." *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 298 (4th Cir. 2005) (internal quotation marks omitted). To satisfy the constitutional standing requirement, a petitioner must aver: "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (citing *Lujan,* 504 U.S. at 560–61).

Respondent's primary contention is that neither Arctic Glacier U.S.A. nor the Plan are signatories to the Agreement, and thus cannot be considered "parties" to it. Respondent further

contends that neither Arctic Glacier U.S.A nor the Plan are parties to the Agreement because they likewise did not execute a written assignment under the Agreement. As a result, Respondent argues, Petitioners lack standing because they have suffered no "invasion of a legally protected interest," that arises from the contract which they wish to enforce. *Lujan*, 504 U.S. at 560, The Court disagrees and finds both the Plan and Arctic Glacier U.S.A. have sufficiently pled an injury in fact.

In *Lujan*, the United States Supreme Court framed the central standing inquiry as whether the legally protected interest was "cognizable" and whether plaintiffs were "among the injured" *Id.* at 562–63; *see also Bennett v. Spear*, 520 U.S. 154, 167 (1997) (omitting "legally protected interest" altogether, replacing it with "judicially cognizable interest" in defining injury-in-fact); *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007) ("[W]hen the Supreme Court used the phrase 'legally protected interest' as an element of injury-in-fact, it made clear it was referring only to a 'cognizable interest.'"), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008). The "legally protected interest" requirement refers to an injury "deserving of legal protection through the judicial process." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972), *cited with approval in Lujan,* 504 U.S. at 561; *see also ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 959 (8th Cir. 2011) ("legally protected interest" requires only a "judicially cognizable interest.").

When considering the Petition as a whole, this Court cannot agree that a mere failure to obtain signatures on an assignment of the Agreement destroys standing. "While a contract cannot bind parties to arbitrate disputes they have not agreed to arbitrate, '[i]t does not follow ... that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision.'" *Int'l Paper Co. v. Schwabedissen*

*Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000) (quoting *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960)). This is because "a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause." *Id.* Theories "arising out of common law principles of contract and agency law" can provide a basis for binding non-signatories to arbitration agreements, including: "incorporation by reference" and "assumption." *Id.* (citing *Thomson–CSF v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995)).

Here, the Petition and its incorporated exhibits demonstrate that Article Glacier U.S.A. and the Plan maintain a legally sufficient interest as the assigned party to the Agreement and the third-party beneficiary, respectively. The Petition reflects that, as of 2012, Respondent provided "services to the plan sponsor" Arctic Glacier U.S.A. and to the Plan for the benefit of Arctic Glacier U.S.A. employees. *See* Petition, ECF No. 1 at 2; Service Agreement, ECF No. 1-1 at 2, 8. As of July 2012, the Plan name was amended from Article Glacier International Inc. to Arctic Glacier U.S.A., Inc., *see* Petition, ECF No. 1 at 2; Cover Letter and Amendment, ECF No. 1-6 at 58–6, and the amendment to change the Plan name was signed by both Respondent and "Trustees for Arctic Glacier U.S.A., Inc. Savings and Retirement Plan." See ECF No. 1-6 at 59. The Plan amendments were all notably identified as part of the Plan at issue in this case, "Group Contract No. GA 4-44349." *Id.* Thereafter, Arctic Glacier U.S.A. provided Respondent with the list of Plan participants—the Arctic Glacier U.S.A. employees, who Respondent ultimately sent the belated January 2014 Notices regarding the Plan change. *See* ECF No. 1 at 6; ECF No. 1-4 at 5. The Petition further includes, at Attachment 2 of Exhibit 6, Respondent's IRS substitution reflecting Arctic Glacier U.S.A. as the new employer of the Plan representative and its employees as Plan participants. *See* Principal Financial Group Prototype for Savings Plans, ECF

No. 1-6 at 12. Accordingly, for Article III standing purposes, the Petition and incorporated exhibits reflect that Arctic Glacier U.S.A. was substituted as the Plan Representative and the Agreement was for the benefit of the Arctic Glacier U.S.A. Plan participants.

In this regard, the Court finds persuasive the Second Circuit Court of Appeals analysis in *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007). Initially, that case turned on whether the certified representative Plaintiffs had constitutional standing to assert ERISA claims that purportedly arose from an agreement between a plan and a plan administrator. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 200 (2d Cir. 2005). Important to the analysis here, the plaintiff's class appeared to include a named plan trustee who had "failed to produce evidence of a relationship between her Plan and [defendant] Medco." *Merck-Medco*, 433 F.3d at 200. Because the District Court failed to address standing, the Court of Appeals remanded for further findings as to standing before reaching the merits.

On appeal after remand, the Second Circuit affirmed the District Court's determination that the Plan trustee in question had constitutional standing even though the specific Plan agreement was "signed by only one party." *Merck-Medco*, 504 F.3d at 242. The agreement, the Court held, "still ha[s] evidentiary value of both an intent to execute the [a]greement, and progress toward such execution." *Id.* (second alteration in original) (internal quotation marks omitted). Accordingly, standing was conferred by virtue of the Plaintiff's involvement in a contractual relationship to provide benefits under ERISA.

Likewise here, the Petition and its incorporated exhibits demonstrate that the Petitioners had a similar contractual relationship with Respondent sufficient to confer standing. Petitioners assumed the obligations and received the benefits under the Agreement. Petitioners likewise

10

were the alleged parties injured by Respondent's failure to provide timely notice of the change in benefits. Perhaps most tellingly, Respondent at oral argument admitted that it submitted the Plan changes to the IRS reflecting the Petitioners as Trustee and participants respectively. Respondent also could not meaningfully dispute that Arctic Glacier U.S.A. has been the Plan representative since July 2012 for the benefit of Arctic Glacier U.S.A employees. *See also ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 960 (8th Cir. 2011) (finding an agreement with a third-party as sufficient evidence of rights under a collective bargaining agreement administered by that third-party); *Novartis Seeds, Inc. v. Monsanto Co.*, 190 F.3d 868, 872 (8th Cir. 1999) (declining to rule on the merits of a proper assignment of a contract, but deciding the plaintiff had contractual rights to bring suit); *cf. Republic Bank & Trust Co. v. Kucan*, 245 F. App'x 308, 311 (4th Cir. 2007) (relying on the allegations in the petition in reversing dismissal for lack of standing of a bank petitioner who sought to compel arbitration). Accordingly, because the Petition demonstrates that Petitioners have effectively stepped into the shoes of the predecessor Plan representatives and participants, they maintain standing to proceed with the Petition. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (holding non-signatory to agreement with arbitration clause binding on successor corporation).

      A final word on the implication of the Court's standing analysis: simply because Petitioners carried their standing burden at this stage does not mean they have demonstrated their rights to enforce the arbitration provision under the Agreement. "[T]he distinction between [merits questions] . . . and subject-matter jurisdiction is a vital one." *Novartis Seeds*, 190 F.3d at 871; *accord Braden*, 588 F.3d at 591. "It is crucial . . . not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive."

*Braden*, 588 F.3d at 591 (citing *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 152–54 (1970)); *accord Cooksey v. Futrell*, 721 F.3d 226, 239 (4th Cir. 2013) (In evaluating standing, "the court must be careful not to decide the question on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003)); *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 272 (3d Cir. 2004) ("The issues that [the appellant] seeks to raise before us relate only to whether [the appellee] has or does not have a contract-based defense requiring arbitration rather than litigation of those claims. That issue is not a jurisdictional one."). Whether Petitioners are an "aggrieved party" under § 4 of the FAA warranting an order to compel arbitration is for the court determining the merits of the Petition to decide.

### C. Diversity Jurisdiction

Respondent's pleadings also raise, although somewhat confusingly, that this Court generally lacks "subject matter jurisdiction." *See* ECF No. 7-1 at 3. Although Respondent at the motions hearing orally confirmed that it was *not* challenging jurisdiction beyond the question of standing, the Court will nonetheless complete the jurisdictional inquiry out of an abundance of caution. *See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (en banc) ("Subject-matter jurisdiction . . . may (or, more precisely, must) be raised *sua sponte* by the court." (citation omitted)).

A petition to compel arbitration may be filed in federal court only if subject matter jurisdiction (federal question, admiralty, or diversity) otherwise exists with regard to the underlying controversy. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983); *Discover Bank v. Vaden*, 396 F.3d 366, 373 (4th Cir. 2005). Diversity

jurisdiction exists when there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

Petitioners have sufficiently alleged diversity jurisdiction here. Respondent is deemed a citizen of Iowa, the Plan citizenship is based on those of its trustees who reside in California and New Jersey, and Arctic Glacier U.S.A. is deemed a citizen of Delaware and Minnesota. *See* Petition, ECF No. 1 at 1–3. Additionally, the jurisdictional amount is satisfied in this case as the amount-in-controversy is over $75,000 looking only to the fee provided to Respondent for the purportedly breached Agreement. *See* Service Agreement, ECF No. 1-1 at 36 (fee of $86,535); *Republic Bank & Trust Co. v. Kucan*, 245 F. App'x 308, 314 (4th Cir. 2007) ("When determining whether the jurisdictional amount is satisfied in a case involving a petition to compel arbitration, it is appropriate to look through the petition to compel to the controversy underlying the arbitration request.") (citing *Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 304 (4th Cir. 1992)). Thus, the Court maintains diversity jurisdiction.[4]

### III. This Court's Authority to Compel Arbitration & Proper Venue

Although the FAA authorizes the Court to compel arbitration, it prescribes that "[t]he [arbitration] hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Respondent argues that the Court should dismiss the Petition because under § 4, only a Nebraska court can order arbitration to take place in Nebraska. *See* ECF No. 7-1 at 5 (citing Service Agreement, ECF No.

---

[4] In passing, Respondent provides in its statement of facts that "Petitioners do not allege that they pursued the dispute resolution procedures by invoking the mediation procedure that is the second step of the preconditions to arbitration under the parties' agreement." ECF No. 7-1 at 2. To the extent Respondent contends the Court lacks jurisdiction over the Petition because the pre-conditions to arbitration (such as negotiation and mediation) have not been met, this issue does not disturb the Court's jurisdiction because this issue of pre-conditions is properly resolved by the arbitrator. *See Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 565 (4th Cir. 2015) (finding that "arbitrators—not courts—must decide whether a condition precedent to arbitrability has been fulfilled").

1-1 at 2, 11 (the parties will arbitrate "in the capital city of the State" and the "State" was previously defined as Nebraska where the Agreement was executed)). Petitioner counters that Respondent has waived any venue arguments because its response to the petition was untimely filed. Neither party is wholly correct.

Turning first to Petitioners' waiver argument, the crux of Petitioners contention is that Respondent filed its motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure after the 21 days provided to file its responsive pleadings to a complaint. *See* ECF No. 9 at 5. In this regard, Petitioners construe the Petition as a complaint and rely on the companion waiver analysis pertaining to complaints. *See* ECF No. 9 at 9 (citing *Md. Elec. Indus. Health Fund v. Valley Sun Indus. Grp.*, 310 F.R.D. 273, 273 (D. Md. 2015); *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960); *Farmers Elevator Mut. Ins. Co. v. Carl J. Austad & Sons, Inc.*, 343 F.2d 7, 12 (8th Cir. 1965)). Petitioners' theory of waiver is inapt.

Section 6 of the FAA mandates that the Court treat petitions as motions, not complaints. *See* 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."); *see also Liberty Mut. Grp., Inc. v. Wright*, No. DKC 12-0282, 2012 WL 718857, at *7 (D. Md. Mar. 5, 2012) (striking answer and counterclaim to a petition pursuant to § 6 of the FAA because "[a]pplications filed pursuant to § 6 are, therefore 'motions . . . rather than complaint[s] initiating . . . plenary action.'" (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 108 (2d Cir. 2006))). Accordingly, petitions are not treated as "actions" that require responsive "pleadings." *See ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 112 (2d Cir. 2012) ("[Respondent] could not have filed an answer here, any more than [Petitioner] could have filed a complaint."). In this way, it is of little persuasive value that Respondent failed to

argue improper venue in the time allotted to answer a complaint when the pleading before this Court is not a complaint at all. The Court therefore finds that Respondent's venue challenge is not waived.

That said, the Court disagrees that venue is proper in this district in light of the forum selection clause contained within the Agreement. Where, as here, the petition to compel arbitration is filed in a district other than the agreed upon forum for arbitration, courts have taken three different approaches to determining the proper venue to adjudicate the petition. *Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co., Inc.*, 628 F. Supp. 2d 674, 683 (E.D. Va. 2009). The first approach is that the Court in which the petition is filed may order directly arbitration to take place in the place specified in the arbitration agreement, even if different than the district in which the Petition is filed. *Dupuy–Buschinq Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1276, 1278 (5th Cir. 1975) (recognizing a Mississippi district court's order directing parties to proceed with arbitration in New Jersey where the plaintiff sought to avoid arbitration by bringing suit in Mississippi, rather than in the contract forum of New Jersey). A second approach permits a district court to compel arbitration in its own district regardless of the forum specified in the arbitration clause. *See Textile Unlimited, Inc. v. A.BMH & Co.*, 240 F.3d 781, 783 (9th Cir. 2001) (where the court held that the FAA "does not require venue in the contractually-designated locale."); *accord Indian Harbor Ins. Co. v. Global Transp. Sys., Inc.*, 197 F. Supp. 2d 1 (S.D.N.Y. 2002). The third approach, taken by a majority of courts, reasons that because § 4 of the FAA confers authority to order arbitration only to the district court located in the same forum chosen for arbitration, the petition must either be dismissed or transferred to the forum court. *See, e.g.*, *Ansari v. Qwest Communs. Corp.*, 414 F.3d 1214, 1220–21 (10th Cir. 2005); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th

15

Cir. 2003); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995).

Although the Fourth Circuit Court of Appeals has not directly resolved this issue, it has suggested that it would likely follow the majority approach. *See Elox Corp. v. Colt Indus., Inc.*, 952 F.2d 395 (4th Cir. 1991) (unpublished) ("The [FAA] provides that a district court deciding a motion to compel arbitration shall defer to the terms of the parties' agreement. The district court must, therefore, apply a forum selection clause contained in the agreement if such a clause exists. Further, if a court orders arbitration, the arbitration must be held in the same district as the court.") (internal citations omitted). *See also UBS Fin. Servs. Inc. v. Carilion Clinic*, 880 F. Supp. 2d 724, 733 n.6 (E.D. Va. 2012) (citing *Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal* Co., Inc., 628 F. Supp. 2d 674, 683 (E.D. Va. 2009).

This Court finds that the most faithful reading of § 4 requires that the Petition be adjudicated by the court located in the agreed-upon arbitration forum. § 4 provides that a Petition to compel arbitration may be brought before "any United States Court;" but also mandates that the arbitration itself, if ordered, "shall be within the district for which the petition for an order directing the arbitration is filed." 9 U.S.C. § 4. Where the parties have elected to arbitrate a matter in a particular forum, and where § 4 directs that arbitration may be compelled only in forum in which the district court is located, it logically follows that the petition must brought in the arbitration forum to comport with § 4. To read it otherwise would render "meaningless the § 4 mandate that arbitration and the order compelling arbitration issue from the same district." *Am. Int'l Specialty Lines Ins. Co.* 628 F. Supp. 2d at 683 (quoting *Mgmt. Recruiters Int'l Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997)). Accordingly, this Court determines that the United States District Court for the District of Nebraska is the proper forum for the instant Petition.

16

Respondent alternatively argues that if venue is not proper, the Petition must be dismissed. The decision to transfer or dismiss the Petition is left to the Court's discretion. *See, e.g., Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) (dismissing the case after finding venue to be improper); *Bank of Commerce & Trust Co. v. Aichholz*, 2003 WL 22738540, at *4 (D. Kan. Nov. 18, 2003) (transferring the dispute over arbitration after determining that venue was improper). Pursuant to 28 U.S.C. § 1404(a), transfer generally is appropriate "[f]or the convenience of parties and witnesses, in the interest of justice." But where "the venue [is] mandated by a choice of forum clause" in the arbitration agreement, it "rarely will be outweighed by other 1404(a) factors." *Braman v. Quizno's Franchise Co., LLC,* 2008 WL 611607, at *6 (N.D. Ohio Feb. 20, 2008).

Indeed, the parties agreed that arbitration would take place in Nebraska and so are hard pressed to claim the same forum is "inconvenient" now that a potentially arbitrable dispute has arisen. *Cf. Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 582 (2013) (venue provision in contract constitutes parties "effectively exercising a 'venue privilege' before a dispute arises." (internal quotation marks in original)). Transfer also is in the interests of justice because it gives full effect to the forum clause of the Agreement. *See Braman v. Quizno's Franchise Co., LLC*, 2008 WL 611607, at *6 (N.D. Ohio Feb. 20, 2008) ("[I]f the forum selection clause is mandatory, then, the interest of justice would weigh toward transfer."). Accordingly, this Court will transfer this matter to the United States District Court for the District of Nebraska.

## IV. CONCLUSION

This Court finds that Petitioners maintain constitutional standing to bring this Petition and diversity jurisdiction is proper. In light of the parties' agreement to arbitrate disputes in

Nebraska, this Court transfers the Petition to Compel Arbitration to the United States District Court for the District of Nebraska for all future proceedings. A separate order shall follow.

| | |
|---|---|
| 6/19/2017 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |