IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ARCTIC GLACIER U.S.A., INC., and ARCTIC GLACIER U.S.A., INC. SAVINGS AND RETIREMENT PLAN,<br><br>Petitioners,<br><br>vs.<br><br>PRINCIPAL LIFE INSURANCE COMPANY,<br><br>Respondent. | 8:17CV214<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Arctic Glacier U.S.A., Inc. ("Arctic Glacier U.S.A.") and Arctic Glacier U.S.A., Inc. Savings and Retirement Plan's (the "Plan" and collectively, "Arctic Glacier") Petition to compel Principal Life Insurance Company ("Principal") to participate in arbitration and other dispute-resolution procedures pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.[1] Although not signatories to the Service and Expense Agreement ("Agreement") between Principal and Arctic Glacier International, Inc. ("Arctic Glacier International") that includes the dispute-resolution procedures, Arctic Glacier U.S.A. and the Plan contend they are nonetheless entitled to enforce those procedures as, respectively, Arctic Glacier International's corporate successor and a third-party beneficiary of the Agreement. Principal moves to dismiss the Petition (Filing No. 7), maintaining neither entity has any rights to compel arbitration or otherwise enforce the Agreement.

---

[1]Following a thorough and well-reasoned opinion on standing and venue, this case was transferred to the District of Nebraska from the District of Maryland based on a forum-selection clause in the Agreement for a merits decision on the Petition. Like the transferring court, this Court treats Arctic Glacier's Petition as a motion and Principal's Motion to Dismiss (Filing No. 7) as an opposition to that motion. *See* 9 U.S.C. § 6.

On August 1, 2017, the Court entered an order giving the parties an opportunity to supplement the record with additional evidence related to the reported sale of Arctic Glacier International's assets in 2012 and the parties' relationship, if any, under the Agreement after that sale. The parties have each filed an Index of Evidence in support of their respective positions. Having thoroughly reviewed the parties' submissions and the record evidence in this case, the Court finds Arctic Glacier has the stronger position, and that referral to arbitration is proper here.

## I.   DISCUSSION
### A.   The Right to Compel Arbitration

Under FAA § 4, "[a] *party aggrieved* by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." (Emphasis added). "The purpose of the FAA is 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Koch v. Compucredit Corp.*, 543 F.3d 460, 463 (8th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)). The FAA declares a "liberal federal policy favoring arbitration agreements" and requires that "questions of arbitrability must be" answered "with a healthy regard for [that] policy." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25.

Still, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). "Ordinary contract principles determine who is bound by . . . written [arbitration] provisions and of course parties can become contractually bound

absent their signatures." *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994) (quoting *A/S Custodia v. Lessin Int'l, Inc.*, 503 F.2d 318, 320 (2d Cir. 1974)). A party's agreement to arbitrate can be implied from its conduct. *Id.* "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

In reviewing a petition to compel arbitration, the Court must determine "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)). The Court must grant a petition to compel arbitration "if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008).

In this case, Principal does not contest the validity or enforceability of its Agreement with Arctic Glacier International or the scope of the arbitration clause. Rather, Principal contends the Petition should be denied and this case dismissed because Arctic Glacier U.S.A. and the Plan are not named as parties in the Agreement and have not otherwise acquired any rights to enforce the arbitration provision. As Principal sees it, "the parties' dispute resolution procedure limits the Agreement to arbitrate to disputes 'between the parties,'" and the Agreement was never amended to make Arctic Glacier U.S.A. or the Plan parties. Principal's arguments are overly simplistic and miss the mark.

B.  **State Contract Law**

"[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants" and "the ability of nonsignatories to enforce arbitration provisions." *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731-32 (8th Cir. 2009). In other words, "a litigant who was not a party to the relevant arbitration agreement may" compel arbitration under § 4 "if the relevant state contract

law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009); *accord Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54, 62 n.2 (1st Cir. 2003) ("A non-signatory may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract.").

The parties agree that Nebraska contract law governs the threshold arbitrability issues in this case. The parties have not cited (and the Court has not found) a case in which a Nebraska court has considered a nonsignatory's ability to enforce an arbitration agreement executed by others. But "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Arthur Andersen*, 556 U.S. at 631 (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)). Nebraska generally follows these traditional principles. *See*, *e.g.*, *Earl v. Priority Key Servs., Inc.*, 441 N.W.2d 610, 613 (Neb. 1989) (corporate successor liability); *Podraza v. New Century Physicians of Neb., LLC*, 789 N.W.2d 260, 267 (Neb. 2010) (third-party beneficiary).

Noting the Agreement binds not only the "Parties" but "also extend[s] to their respective successors and assigns," Arctic Glacier contends Arctic Glacier U.S.A.—as Arctic Glacier International's successor—"has all rights that formerly belonged to Arctic Glacier International under the Agreement, including the right to enforce any dispute resolution provisions." As for the Plan, Arctic Glacier asserts it is authorized to enforce the arbitration provisions as a third-party beneficiary of the Agreement under Nebraska law. The Court takes each argument in turn.

### 1. Corporate Successor

"Black's Law Dictionary defines 'successor' as '[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation.'" *Dawson v. Rent-A-Ctr. Inc.*, 490 F. App'x 727, 730 (6th Cir. 2012) (unpublished) (quoting Black's Law Dictionary (9th ed. 2009)). As

evidence of its right to enforce the arbitration provision as Arctic Glacier International's successor, Arctic Glacier U.S.A. relies, in part, on a sworn declaration and a written Asset Purchase Agreement indicating that in June 2012, H.I.G. Zamboni, LLC purchased substantially all of the assets of Arctic Glacier International and assumed its liabilities and formed Arctic Glacier U.S.A. to succeed Arctic Glacier International. According to Arctic Glacier, "[a]s part of the acquisition, Arctic Glacier International transferred sponsorship of the Plan and the related rights, duties, and obligations under the [Agreement] to Arctic Glacier U.S.A."

In support, Arctic Glacier points to a July 20, 2012, letter sent to Principal with the subject line "Change in Plan Sponsorship" (Filing No. 1-6, Attach No. 1). In that letter, an Arctic Glacier International trustee notified Principal that "[i]n connection with the sale of substantially all of the assets of [Arctic Glacier International] to H.I.G. Zamboni, LLC (the 'Purchaser'), sponsorship of the [Arctic Group International Inc. Savings and Retirement Plan] is to be transferred to and assumed by an affiliate of the Purchaser, Arctic Glacier U.S.A., Inc." The letter asked Principal to prepare an amendment to make that change and noted that "all ancillary agreements and arrangements relating to the Plan, such as service and administrative agreements between [Arctic Glacier International] and Principal, will also need to be transferred from [Arctic Glacier International] to the new plan sponsor."

In August 2012, Principal prepared and the parties executed Amendment No. 4 to the group annuity contract, made effective July 25, 2012. In a letter dated August 10, 2012, a Principal Client Service Manager explained that the amendment, among other things, changed the "Contractholder" from the "Trustees of Arctic Glacier International Inc., [sic] Savings and Retirement Plan" to the "Trustees of Arctic Glacier U.S.A., Inc. Savings and Retirement Plan" "to reflect change(s) you requested." The letter further advised the "amendment [would] become part of your contract only after we receive a signed copy of the signature page." As directed, an Arctic Glacier officer signed for the

trustees of Arctic Glacier International and the trustees of Arctic Glacier U.S.A. According to Arctic Glacier, Principal never objected to the amendment and notified the IRS of the Plan's name change.

Although the record indicates the group annuity contract was successfully amended, as Principal notes, it does not appear the Agreement itself or any other ancillary agreements related to the Plan were formally amended or transferred as contemplated by Arctic Glacier's July 20, 2012, letter. According to Arctic Glacier, however, Principal "continued to provide services to and receive payments from Arctic Glacier U.S.A. consistent with the course of dealing established under the [Agreement] with Arctic Glacier International." In Arctic Glacier's view, "[t]here was no change in either party's performance, and [Principal] did not terminate the Agreement or otherwise indicate or act as though it viewed the Agreement as inapplicable to Arctic Glacier U.S.A. and the Plan." Principal has not contradicted Arctic Glacier's description of the parties' post-amendment relationship, focusing instead solely on the lack of "evidence of an executed written amendment of the Agreement."

While the development of the record in this case still leaves room for improvement, the uncontested evidence before the Court indicates Arctic Glacier U.S.A. is the corporate successor of Arctic Glacier International, a named signatory to the Agreement. Under Nebraska law, a corporation that purchases the assets of another corporation can succeed to the rights and obligations of that corporation by expressly or impliedly agreeing to assume them. *See*, *e.g.*, *Earl*, 441 N.W.2d at 613. Though limited, the undisputed record evidence in this case indicates Arctic Glacier U.S.A. assumed Arctic Glacier International's rights and obligations under the Agreement in conjunction with the purchase of substantially all of Arctic Glacier International's assets in 2012.

Relying on a General Provision in the Agreement, Principal argues the right to arbitrate could not be "assigned . . . without the express written agreement of both

6

Parties"—absent here. But the assignment provision does not apply in this case because Arctic Glacier U.S.A. did not take rights under the Agreement by assignment. It succeeded to Arctic Glacier International's interests in the Agreement upon the purchase of Arctic Glacier International's assets and the assumption of its rights and obligations. Another General Provision in the Agreement unconditionally states that the Agreement extends to the signatories' "respective successors and assigns."

To the extent Principal's assent was necessary, Principal accepted and assented to the transfer of interests and obligations, even if it never formally "*agreed* to amend the Agreement by changing the counter-party to Arctic Glacier U.S.A." or executed a written amendment. Rather than object when notified of the prospective transfer and resulting changes to the Plan sponsor and Plan name, Principal prepared and executed the necessary amendment, acknowledged Arctic Glacier U.S.A. as its client, and provided services to Arctic Glacier U.S.A. and the Plan beginning in 2012, including giving the Internal Revenue Service notice of the substitution of Arctic Glacier U.S.A. as the Plan sponsor and the renaming of the Plan. Principal's eleventh-hour objection to Arctic Glacier U.S.A. is unavailing. *Cf. Daisy Mfg. Co.*, 29 F.3d at 392 (rejecting a party's attempt "to avoid its obligations under" an arbitration agreement because the evidence established the party had "ratified and accepted" the agreement by its conduct and course of dealing).

Satisfied Arctic Glacier U.S.A. is Arctic Glacier International's corporate successor, the next question for the Court is whether Arctic Glacier U.S.A. can enforce the arbitration provisions in the Agreement under Nebraska law. Although the Nebraska courts have yet to decide the issue,[2] other courts have recognized the right of a corporate successor like Arctic Glacier U.S.A. to compel a signatory to an arbitration agreement to arbitrate an issue clearly within the scope of the agreement. *See*, *e.g.*, *Adams v. AT & T*

---

[2]"When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue." *Continental Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006).

*Mobility, LLC*, 524 F. App'x 322, 324 (9th Cir. 2013) (unpublished); *Dawson*, 490 F. App'x at 730-31; *Marjorie R. Brown Tr. v. Morgan Stanley Smith Barney, LLC*, No. 317993, 2015 WL 501403, at *4 (Mich. Ct. App. Feb. 5, 2015); *cf. CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005) (explaining "[a] nonsignatory can enforce an arbitration clause against a signatory to the agreement in several circumstances," including "when 'the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.'") (quotation omitted). Based on this persuasive authority, the Court finds Arctic Glacier U.S.A. is entitled under Nebraska law to compel Principal to arbitrate the dispute described in the Petition.

### 2. Third-Party Beneficiary

The last arbitrability question is closer, but the Court also agrees with Arctic Glacier that the Plan is entitled to compel Principal to arbitrate as a third-party beneficiary of the Agreement. Under Nebraska law, "[t]he right of a third party benefited by a contract to sue thereon must affirmatively appear from the language of the instrument when properly interpreted or construed." *Podraza*, 789 N.W.2d at 267. To establish such a right, the party claiming to be a third-party beneficiary must show "by express stipulation or by reasonable intendment that the rights and interest of such unnamed parties were contemplated and that provision was being made for them." *Id.*

Here, the primary purpose of the Agreement was to facilitate Principal providing "core Plan administrative services" to the Plan, its sponsor, and its participants for a fee. The present dispute arises from Principal's alleged failure to give—on the Plan's behalf—proper notice to Plan participants of significant changes in the Plan's investment options, resulting in potential financial losses to Plan participants.

While Principal is correct that the Agreement does not include an "express stipulation" that the arbitration provision was made for the benefit of the Plan, the Court

finds Arctic Glacier has sufficiently demonstrated the parties (1) had the Plan's rights and interests in mind in entering the Agreement and (2) reasonably intended that the Agreement was for the Plan's benefit and that the Plan would have the right to compel arbitration as a third-party beneficiary under the circumstances of this case.

## II. CONCLUSION

Arctic Glacier U.S.A. and the Plan are each entitled to enforce the arbitration provision in the Agreement under Nebraska law. Accordingly,

IT IS ORDERED:
1. Arctic Glacier U.S.A. and the Plan's Petition to Compel Arbitration and Other Dispute Resolution Procedures (Filing No. 1) is granted.
2. Principal's alternative Motion to Dismiss (Filing No. 7) is denied.
3. The parties are directed to proceed to arbitration pursuant to Article IV of the Service and Expense Agreement.
4. This case is stayed pending arbitration.
5. The parties shall file a joint status report regarding the progress of arbitration proceedings every ninety (90) days beginning December 1, 2017.
6. The Clerk of Court is directed to set an initial Status Report Deadline of December 1, 2017.

Dated this 24th day of August, 2017.

BY THE COURT:

s/ *Robert F. Rossiter, Jr.*
United States District Judge